IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| DIGITAL DRILLING DATA | § | |
| SYSTEMS LLC, | § | |
| | § | |
| Plaintiff, | § | |
| vs. | § | CIVIL ACTION NO. 4:15-cv-2172 |
| | § | |
| PETROLINK SERVICES INC. & | § | |
| LEE GEISER, | § | |
| | § | |
| Defendants. | § | JURY DEMANDED |

**PLAINTIFF'S FIRST AMENDED COMPLAINT AND APPLICATION
FOR PERMANENT INJUNCTION**

TO THE HONORABLE COURT:

Plaintiff Digital Drilling Data Systems LLC ("Digidrill") files this First Amended

Complaint and Application for Permanent Injunction against Petrolink Services Inc.

("Petrolink") and Lee Geiser and shows the following:

I.
Introduction

1.     Digidrill is a leading provider of software and hardware to directional

drilling companies in North America.  Data Logger (referred to as "Data Logger") is

Digidrill's primary product and since its introduction to the market in 2005, has become

the preferred measuring while drilling (hereafter "MWD") software package among

independent operators.

First Amended Complaint: Digital Drilling v. Petrolink                     Page 1

2.      Digidrill is the registered copyright owner of the Data Logger software. Digidrill's Registration No. for Data Logger V4.9x is TXU1842064.  Digidrill's Registration No. for Data Logger V5 is TXU1842092.

3.      Digidrill brings this case because one of its competitors, Petrolink, has circumvented the copyright protection measures embedded in Data Logger and unlawfully infringed on Digidrill's exclusive rights by reproducing and using information protected under the Data Logger copyrights, including both literal and non-literal copyrighted information.  Petrolink is exploiting Digidrill's copyright protected information for commercial purposes without Digidrill's consent.

II.
Parties

4.      Plaintiff Digidrill is a company organized and doing business under the laws of Texas.

5.      Defendant Petrolink Services Inc. is a Texas corporation with a principal place of business located at 5506 Mitchelldale Street, Houston, TX 77092.  Petrolink Services Inc. has been served with process through its registered agent, David R. Baker, 2719 Colquitt St., Houston, TX 77098.

6.      Defendant Lee Geiser is the COO and Executive VP Global Operations of Petrolink Services Inc. and has been served with process at his place of business at 5506

First Amended Complaint: Digital Drilling v. Petrolink                    Page 2

Mitchelldale Street, Houston, TX 77092, and/or his home address, 12322 Huntingwick Drive, Houston, Texas 77024-4905.

### III.
### Jurisdiction and Venue

7.      This is a civil action for: copyright infringement under 17 U.S.C. § 501 *et seq.*; digital trespass a.k.a. circumvention of technological measures under the Digital Millennium Copyright Act, 17 U.S.C. § 1201 *et seq.*; fraud and related activity in connection with computers under the Computer Fraud and Abuse Act, 18 U.S.C. § 1030 *et seq.*, including without limitation §§ 1030(a)(2)(C), 1030(a)(4), 1030(a)(5)(A), 1030 (a)(5)(B), 1030(a)(5)(C), and 1030(a)(6)(A), and unjust enrichment.

8.      This Court has original jurisdiction of this civil action under 28 U.S.C. §§ 1331 and 1338.

9.      Venue is proper in the United States District Court of Texas, Houston Division under 28 U.S.C. § 1391(b)(1)-(2).  All Defendants are Texas residents, and thus they have consented to the jurisdiction of this Court.  In addition, all or most of the events giving rise to this cause of action took place in Houston, Harris County, Texas.  28 U.S.C. § 124(b)(2).

### IV.
### Factual Background

10.      One of the more common drilling techniques used today is directional drilling which permits a drilling operator to steer a drill bit.  Data Logger provides the

necessary data that allows drilling operators on the surface of an oil rig to accurately steer the drill bit into specific targets and zones thousands of feet underground.  Digidrill's customers are typically oil field service companies that employ drilling operators on oil wells.  These oil field service companies are commonly referred to as "Directional Drilling Companies" and are typically hired by the company that owns the mineral rights and directs and controls the drilling and production phases of the well.  Those companies are commonly referred to as "Operators."

11.     Data Logger consists of software, which is installed on a computer, and hardware at the well site.  Data Logger works by collecting information from a variety of sensors on the rig and MWD (Measurement While Drilling) tools located at the bottom of the drill pipe.  Data Logger uses that information and performs various calculations on the location of the drill bit and well bore and other metrics to generate logs, survey reports, and hundreds of pieces of information on a real time basis.  Such information is utilized in real time by the drilling operators (typically a directional driller and MWD hand) employed by the Directional Drilling Companies to steer the bit into specific targets and zones.

12.     The information is derived in real time by the Data Logger software based upon choices and the judgment of Data Logger's authors as applied to the sensor data and other information.  Specifically, the data collected from the sensors and MWD tools undergoes Data Logger's own manipulation process consisting of application of

First Amended Complaint: Digital Drilling v. Petrolink                    Page 4

Digidrill's proprietary calculations to the data, to generate additional data, including the following types of information:

1. Measure Depth – measure of the depth of the drill offset by placement;

2. True Vertical Depth– true depth of the drill bit when drilling horizontally;

3. Vertical Section – measuring placement along compass;

4. Northing – measuring North/South directional placement;

5. Easting – measuring East/West directional placement;

6. Dog Leg Severity – measuring how aggressively the drill bit is turning; and

7. API – corrected gamma counts in "API" units.

13.    All information generated by Data Logger, including the above items, ("Data Logger Information") is stored in Data Logger's own "database" which has relational tables with a unique and creative structure and organization.  The structure and organization of Data Logger's database tables are the subject matter of copyright, and are copyrighted features of the registered Data Logger software.

14.    The Data Logger Information is individually the subject of copyright.  The Data Logger Information embodies selection and organization of sensor data that has been gathered, stored, and derived.  The information items contained in the Data Logger

Information are original works of authorship in a manner according to the talent and creativity of the author that designed and wrote the Data Logger software.

15.     The items of Data Logger Information are individually non-literal features of the registered Data Logger software.  These items of information embody selection and organization of sensor data that is gathered and stored; and the derivation of the items based upon the sensor data are original works of authorship in a manner according to the talent and creativity of the author that designed and wrote the Data Logger software.

16.     The items of Data Logger Information are aggregately the subject of copyright.  Data Logger displays these many items of information in a structure, selection and organization that exhibit the creative authorship of the software developer.  Each of the many items of information forming the aggregate individually embodies a selection and organization of sensor data that is gathered and manipulated according to the creative authorship of the author that designed and wrote the Data Logger software.

17.     The several items of Data Logger Information are aggregately the non-literal features of the registered Data Logger software.  In the aggregate, the many items of information embody a structure, selection and organization of the many items that exhibits the creative authorship of the software's author.  Each of the many items of information forming the aggregate each individually embodies a selection and organization of sensor data that is gathered and manipulated according to the creative authorship of the author that designed and wrote the Data Logger software.

First Amended Complaint: Digital Drilling v. Petrolink                    Page 6

18.     Data Logger's "database" is located on the computers utilized by Digidrill's Directional Drilling Company customers at the well site.   Each information item and the aggregate of the Data Logger Information on Data Logger's "database" are only accessible via an authorized user name and password providing access to the database. Digidrill's Directional Drilling Company customers do not have access to this user name and password.  Rather, the user name and password are embedded in the Data Logger software, such that the authorized users are not required to manually enter the information.   The Data Logger software and database recognize the credentials of authorized users.  The user name and password are not provided and have never been provided to any third party, including Digidrill's Directional Drilling Company customers, and have never been requested by the Directional Drilling Companies' customers.

19.     In addition to deriving revenue from the use of its Data Logger software by its Directional Drilling Company customers, Digidrill also derives revenue through the sale of Data Logger Information to Operators, including information items and the aggregate of information items that are gathered by Data Logger.  Petrolink competes with Digidrill to sell this type of information to Operators.

20.     On July 2, 2015, one of Digidrill's Directional Drilling Company's customers had a problem with Data Logger and called Digidrill to assist it in determining the source of the problem.   In doing so, Digidrill discovered that Petrolink had installed an

First Amended Complaint: Digital Drilling v. Petrolink                     Page 7

application program on Digidrill's customer's computer and that such application had impaired the integrity of Data Logger.  Digidrill discovered that Petrolink's application was designed solely for the purpose of hacking into Digidrill's Data Logger "database" every ten seconds to extract the aggregate of data items derived by Data Logger. Petrolink's unlawful application software will hereafter be referred to as "Petrolink's Unlawful Data Scraper Program".

21.     On information and belief, Lee Geiser as COO and Executive VP of Global Operations of Petrolink and in his individual capacity, conceived, orchestrated and directed the preparation of Petrolink's Unlawful Data Scraper Program.  On further information and belief, Lee Geiser and his staff conceived and developed Petrolink's Unlawful Data Scraper in an effort to avoid the expenditure of costs and expenses incident to designing, purchasing, installing and servicing hardware and software at the well site.  On further information and belief, Lee Geiser proposed the use of Petrolink's Unlawful Data Scraper Program to improve the profitability of his group and the profitability of Petrolink.  As Chief Operating Officer, Lee Geiser's acts of copyright infringement give rise to liability in his individual capacity.

22.     On information and belief, Petrolink's Unlawful Data Scraper Program descrambles, decrypts, avoids, bypasses, deactivates and/or impairs Data Logger's technological measures without the authority of Digidrill and is unlawfully hacking into hundreds of Data Logger "database(s)" on drilling rigs across the country in lieu of

designing, purchasing, installing and servicing its own hardware and software that would allow Petrolink to capture and generate its own information.  On further information and belief, Petrolink has been selling the Data Logger Information that it has unlawfully extracted from the Data Logger "database(s)" to Operators.

23.     Petrolink's Unlawful Data Scraper Program is copying, transmitting and storing copies of Digidrill's copyrighted information at least in the form of structure and organization of the database tables, aggregate of data items and individual data items.  In doing so, Petrolink's Unlawful Data Scraper Program is impairing the integrity of Data Logger by, among others, corrupting Data Logger's electronic files and diminishing the usability of Data Logger.  Such activity has caused Digidrill to suffer both damages and losses.

24.     On information and belief, Petrolink has hacked into Digidrill's customers' computers and utilized its Unlawful Data Scraper Program to circumvent Data Logger's copyright protection measures and unlawfully stolen the Data Logger Information generated by Data Logger from computers throughout the United States.

25.     Digidrill has never provided the required user name and password to any of its customers, or customers of its customers, let alone been asked to do so.

26.     Petrolink's and Geiser's conduct gives rise to the following causes of action.

VI.

Causes of Action

**Count 1 – Copyright Infringement (17 U.S.C. § 501(a))**

27.     Digidrill reasserts the facts and allegations set forth in paragraphs 1 through 26 above.

28.     Digidrill owns valid copyrights in Data Logger and all derivative works, including subsequent versions, improvements, and enhancements of Data Logger. Digidrill has received Registration No. TXU1842064 for Data Logger V4.9x and Registration No. TXU1842092 for Data Logger V5.

29.     By illegally accessing the Data Logger database through Petrolink's Unlawful Data Scraper Program and using Digidrill's user name and password without Digidrill's authority or permission, Petrolink copied, distributed, transmitted, and stored Digidrill's copyrighted data onto its own computers and databases, as well as to its own customers.

30.     The foregoing acts give rise to a cause of action under U.S. copyright law, including 15 U.S.C. § 501(a) *et seq.*

31.     The acts of Petrolink and Lee Geiser are inextricably intertwined. Accordingly, the acts of Petrolink are the acts of Lee Geiser and the acts of Lee Geiser are the acts of Petrolink.

## **Count 2 – Willful Violations of the Digital Millennium Copyright Act – Circumvention of Copyright Protection System (17 U.S.C. § 1201(a)(1))**

32.     Digidrill reasserts the facts and allegations set forth in paragraphs 1 through 31 above.

33.     Digidrill owns valid copyrights in Data Logger and all derivative works, including subsequent versions, improvements, and enhancements of Data Logger. Digidrill has received Registration No. TXU1842064 for Data Logger V4.9x and Registration No. TXU1842092 for Data Logger V5.

34.     Data Logger Information on Data Logger's "database" is only accessible via an authorized user name and password providing access to the database, consisting of a technological measure which controls access to Data Logger. By knowingly using Petrolink's Unlawful Data Scraper Program and using Digidrill's user name and password without Digidrill's authority or permission to unlawfully access Digidrill's copyrighted data in the Data Logger database(s), Petrolink has circumvented a technological measure effectively used by Digidrill to control access to its protected copyrighted work.   On information and belief, Petrolink's Unlawful Data Scraper Program descrambles, decrypts, avoids, bypasses, deactivates and/or impairs Data Logger's technological measures without the authority of Digidrill.   Petrolink has circumvented Digidrill's technological measures for the purpose of extracting Digidrill's copyrighted data, thereby violating 17 U.S.C. §§ 1201(a)(1)(A).

First Amended Complaint: Digital Drilling v. Petrolink                    Page 11

35.     As a result of Petrolink's circumvention of technological measures, Petrolink is able to extract Digidrill's Data Logger Information from Digidrill's Data Logger database without the authorization of Digidrill, in a manner that infringes Digidrill's copyrights.

36.     On information and belief, Petrolink's Unlawful Data Scraper Program was designed primarily as a counterfeit access device, and as a means to obtain Digidrill's copyrighted information from its Data Logger database.   Petrolink's Unlawful Data Scraper Program is used for the sole purpose of hacking into Digidrill's Data Logger database.

37.     The acts of Petrolink and Lee Geiser are inextricably intertwined. Accordingly, the acts of Petrolink are the acts of Lee Geiser and the acts of Lee Geiser are the acts of Petrolink.

### Count 3 – Willful Violations of U.S. Copyright Act: Illegal Hacking of Data Logger Software

38.     Digidrill reasserts the facts and allegations set forth in paragraphs 1 through 37 above.

39.     By knowingly circumventing the copyright protection measures embedded in Data Logger for the purpose of extracting copyrightable data through Petrolink's Unlawful Data Scraper Program, Petrolink willfully violated 17 U.S.C. §§ 106(1), 501 and 1201(a)(1(A).  After hacking into Digidrill's copyrighted data, Petrolink proceeded to use

First Amended Complaint: Digital Drilling v. Petrolink                    Page 12

its Unlawful Data Scraper Program to download Digidrill's copyrighted data for its own commercial gain.

40.     The acts of Petrolink and Lee Geiser are inextricably intertwined. Accordingly, the acts of Petrolink are the acts of Lee Geiser and the acts of Lee Geiser are the acts of Petrolink.

### Count 4 –Violation of the Computer Fraud and Abuse Act
### (18 U.S.C. § 1030(a)(2)(C))
### (*accessing a protected computer and obtaining information from a protected computer*)

41.     Digidrill reasserts the facts and allegations set forth in paragraphs 1 through 40 above.

42.     Petrolink intentionally accessed Digidrill's Data Logger database by using Petrolink's Unlawful Data Scraper Program.  Digidrill's Data Logger database was protected by user name and password.  Using Digidrill's user name and password without Digidrill's permission or authority, Petrolink accessed a protected computer without authorization or exceeded authorized access, in violation of 18 U.S.C. § 1030(a)(2).

43.     Through Petrolink's unlawful acts, including polling (querying) Digidrill's Data Logger database every ten (10) seconds, Petrolink unlawfully obtained Digidrill's information from a protected computer.

44.     By means of such conduct, Petrolink's Unlawful Data Scraper Program is impairing the integrity of Data Logger by corrupting Data Logger's electronic files and diminishing the usability of Data Logger.  Such activity has caused Digidrill to suffer both

damages and losses to Digidrill's Data Logger database, copyrighted data, and Digidrill itself.  Petrolink obtained information of value, exceeding $5,000 in a one year-period.  On information and belief, Petrolink's sales of Digidrill's copyrighted information were in excess of $5,000 in a one-year period.  Moreover, to the extent that Petrolink's sales were derived from the sale of Digidrill's copyrighted information, Digidrill suffered damages in excess of $5,000 in a one-year period.

45.     Both Petrolink and Lee Geiser are inextricably intertwined.  Accordingly, the acts of Petrolink are the acts of Lee Geiser and the acts of Lee Geiser are the acts of Petrolink.

## Count 5 –Violation of the Computer Fraud and Abuse Act
### (18 U.S.C. § 1030(a)(4))
### *(accessing a protected computer without authorization)*

46.     Digidrill reasserts the facts and allegations set forth in paragraphs 1 through 45 above.

47.     In accessing Digidrill's Data Logger database by using its Unlawful Data Scraper Program and using Digidrill's user name and password without Digidrill's permission or authority, Petrolink knowingly and with intent to defraud, accessed a protected computer without authorization or exceeded authorized access, in violation of 18 U.S.C. § 1030(a)(4).

48.     Through Petrolink's unlawful acts, including polling (querying) Digidrill's Data Logger database every ten (10) seconds, Petrolink unlawfully obtained Digidrill's information from a protected computer.

49.     Petrolink's acts were for the purpose of obtaining Digidrill's copyrighted information and selling and passing such off as that of Petrolink, thereby defrauding and damaging Digidrill.

50.     By means of such conduct, Petrolink obtained information of value, exceeding $5,000 in a one year-period.

51.     Both Petrolink and Lee Geiser are inextricably intertwined. Accordingly, the acts of Petrolink are the acts of Lee Geiser and the acts of Lee Geiser are the acts of Petrolink.

## Count 6 – Violation of the Computer Fraud and Abuse Act (18 U.S.C. § 1030(a)(5)(A)) (_transmission of code_)

52.     Digidrill reasserts the facts and allegations set forth in paragraphs 1 through 51 above.

53.     In accessing Digidrill's Data Logger databases by using its Unlawful Data Scraper Program and using Digidrill's user name and password without Digidrill's permission or authority, Petrolink knowingly caused the transmission of a program, information, code, or command.  Further, Petrolink knowingly failed to close its connection by polling (querying) Digidrill's program every ten (10) seconds and as a

result of such conduct, knowingly caused the transmission of a program, information, code and/or commands directed at Digidrill's Data Logger database.  On information and belief, Petrolink's acts were for the purpose of obtaining and selling Digidrill's copyrighted information to Petrolink's customers.

54.     Through Petrolink's unlawful acts, including accessing and polling (querying) Digidrill's Data Logger database every ten (10) seconds, and as a result of such conduct, Petrolink intentionally caused damage without authorization to a protected computer in violation of 18 U.S.C. § 1030(a)(5)(A).

55.     Through such acts of knowing transmission, Petrolink intentionally caused damage in excess of $5,000, without authorization to a protected computer.  By means of such conduct, Petrolink's Unlawful Data Scraper Program is impairing the integrity of Data Logger by corrupting Data Logger's electronic files and diminishing the usability of Data Logger.  Such activity has caused Digidrill to suffer both damages and losses to Digidrill's Data Logger database, copyrighted data, and Digidrill itself.  Petrolink obtained information of value, exceeding $5,000 in a one year-period.  On information and belief, Petrolink's sales of Digidrill's copyrighted information were in excess of $5,000 in a one-year period.  Moreover, to the extent that Petrolink's sales were derived from the sale of Digidrill's copyrighted information, Digidrill suffered damages in excess of $5,000 in a one-year period.

56.     The acts of Petrolink and Lee Geiser are inextricably intertwined. Accordingly, the acts of Petrolink are the acts of Lee Geiser and the acts of Lee Geiser are the acts of Petrolink.

### Count 7 – Violation of the Computer Fraud and Abuse Act (§ 1030(a)(5)(B)) (*intentional access without authorization, recklessly causing damage*)

57.     Digidrill reasserts the facts and allegations set forth in paragraphs 1 through 56 above.

58.     In accessing Digidrill's Data Logger database(s) by using its Unlawful Data Scraper Program and using Digidrill's user name and password without Digidrill's permission or authority, Petrolink intentionally accessed a protected computer without authorization.  Further, Petrolink knowingly failed to close its connection by polling (querying) Digidrill's program every ten (10) seconds and as a result of such conduct, intentionally accessed a protected computer without authorization.  On information and belief, Petrolink's acts were for the purpose of obtaining and selling Digidrill's copyrighted information to Petrolink's customers.

59.     Through Petrolink's unlawful acts, including accessing and polling (querying) Digidrill's Data Logger database every ten (10) seconds, and as a result of such conduct, Petrolink has recklessly caused damage to Digidrill's Data Logger database, copyrighted data, and Digidrill itself, in violation of 18 U.S.C. § 1030(a)(5)(B).

60.     Through such acts of intentional access, Petrolink recklessly caused damage in excess of $5,000, without authorization to a protected computer.  By means of such conduct, Petrolink's Unlawful Data Scraper Program is impairing the integrity of Data Logger by corrupting Data Logger's electronic files and diminishing the usability of Data Logger.  Such reckless activity has caused Digidrill to suffer both damages and losses to Digidrill's Data Logger database, copyrighted data, and Digidrill itself.   Petrolink obtained information of value, exceeding $5,000 in a one year-period.  On information and belief, Petrolink's sales of Digidrill's copyrighted information were in excess of $5,000 in a one-year period.  Moreover, to the extent that Petrolink's sales were derived from the sale of Digidrill's copyrighted information, Digidrill suffered damages in excess of $5,000 in a one-year period.

61.     Both Petrolink and Lee Geiser are inextricably intertwined. Accordingly, The acts of Petrolink are the acts of Lee Geiser and the acts of Lee Geiser are the acts of Petrolink.

### Count 8 – Violation of the Computer Fraud and Abuse Act (§ 1030(a)(5)(C)) (*intentional access without authorization, causing damage and loss*)

62.     Digidrill reasserts the facts and allegations set forth in paragraphs 1 through 61 above.

63.     In accessing Digidrill's Data Logger databases by using the Unlawful Data Scraper Program and using Digidrill's user name and password without Digidrill's

permission or authority, Petrolink intentionally accessed a protected computer without authorization.  Further, Petrolink knowingly failed to close its connection by polling (querying) Digidrill's program every ten (10) seconds and as a result of such conduct, intentionally accessed a protected computer without authorization.  On information and belief, Petrolink's acts were for the purpose of obtaining and selling Digidrill's copyrighted information to Petrolink's customers.

64.     Through Petrolink's unlawful acts, including accessing and polling (querying) Digidrill's Data Logger database every ten (10) seconds and obtaining Digidrill's copyrighted data, and as a result of such conduct, Petrolink has caused damages and losses to Digidrill's Data Logger database, copyrighted data, and Digidrill itself, in violation of 18 U.S.C. § 1030(a)(5)(C).

65.     Through such acts of intentional access, Petrolink has caused damages and losses in excess of $5,000, without authorization to a protected computer.  By means of such conduct, Petrolink's Unlawful Data Scraper Program is impairing the integrity of Data Logger by corrupting Data Logger's electronic files and diminishing the usability of Data Logger.  Petrolink obtained information of value, exceeding $5,000 in a one year-period.   On information and belief, Petrolink's sales of Digidrill's copyrighted information were in excess of $5,000 in a one-year period.  Moreover, to the extent that Petrolink's sales were derived from the sale of Digidrill's copyrighted information, Digidrill suffered damages in excess of $5,000 in a one-year period.

66.     The acts of Petrolink and Lee Geiser are inextricably intertwined. Accordingly, the acts of Petrolink are the acts of Lee Geiser and the acts of Lee Geiser are the acts of Petrolink.

### Count 9 – Violation of the Computer Fraud and Abuse Act (§ 1030(a)(6)(A)) (*trafficking passwords in interstate commerce*)

67.     Digidrill reasserts the facts and allegations set forth in paragraphs 1 through 66 above.

68.     In accessing Digidrill's Data Logger databases by using Petrolink's Unalwful Data Scraper Program and using Digidrill's user name and password without Digidrill's permission or authority, Petrolink has accessed a protected computer without authorization.

69.     Petrolink used its Unlawful Data Scraper Program as a counterfeit access device, and as a means to obtain Digidrill's copyrighted information from its Data Logger database.  Petrolink's Unlawful Data Scraper Program was used for the sole purpose of hacking into Digidrill's Data Logger database.  Petrolink illegally accessed Digidrill's copyrighted information residing on its Data Logger database through the use of its Unlawful Data Scrapper Program.  On information and belief, after accessing Digidrill's Data Logger database, Petrolink's Unlawful Data Scraper Program polled (queried)

Digidrill's Data Logger database every ten (10) seconds to obtain copies of Digidrill's copyrighted information, which it then sold to customers.

70.     As a result of Petrolink's use of its Unlawful Data Scraper Program, Petrolink knowingly and with intent to defraud traffics in a password or similar information through which a computer may be accessed without authorization, in violation of 18 U.S.C. § 1030(a)(6)(A).

71.     Petrolink's trafficking acts affect interstate commerce.

72.     As a result of Petrolink's conduct, Petrolink has obtained information of value, exceeding $5,000 in a one year-period.  On information and belief, Petrolink's sales of Digidrill's copyrighted information were in excess of $5,000 in a one-year period. Moreover, to the extent that Petrolink's sales were derived from the sale of Digidrill's copyrighted information, Digidrill suffered damages in excess of $5,000 in a one-year period.

73.     The acts of Petrolink and Lee Geiser are inextricably intertwined. Accordingly, the acts of Petrolink are the acts of Lee Geiser and the acts of Lee Geiser are the acts of Petrolink.

## Count 10 – Common Law Unjust Enrichment

74.     Digidrill reasserts the facts and allegations set forth in paragraphs 1 through 73 above.

75.     By selling Digidrill's copyrighted data as its own, Petrolink has been unjustly enriched and has garnered profits that rightfully belong to Digidrill.

76.     Petrolink's profits are directly related to Petrolink's wrongful acts pertaining to Digidrill's copyrighted data.

77.     Petrolink should be disgorged of its ill-gotten gains.

IX.
Permanent Injunction

78.     Digidrill further requests that a permanent injunction be ordered on the final trial of this cause, enjoining Petrolink from directly or indirectly circumventing Data Logger's copyright protection measures, including by utilizing Petrolink's Unlawful Data Scraper Program to access Digidrill's Data Logger database(s) and/or utilizing any Digidrill user name and password to access Digidrill's Data Logger database(s); polling Digidrill's Data Logger database through any means including by utilizing Petrolink's Unlawful Data Scraper Program; providing any customers or other third parties with any instructions regarding use of Petrolink's Unlawful Data Scraper or access of Digidrill's Data Logger database(s); copying or transmitting any of Digidrill's copyrighted information, except for purposes of this action; and continuing to market and/or sell any information extracted from Digidrill's Data Logger database and further enjoined in a manner that the Court deems appropriate and necessary to fully preserve the rights granted to the copyright owner.

XI.
Conditions Precedent

79.     All conditions precedent to Digidrill's right to recover as herein alleged, if

any, have been performed, have occurred or have been waived.

XII.
Jury Demand

80.     Digidrill demands a trial by jury.

XIII.
Prayer

81.     For these reasons, Digidrill asks for judgment against Petrolink and Lee

Geiser for the following:

a)      Actual damages, statutory damages and the infringer's profits attributable

to the infringement pursuant to 17 U.S.C. § 504;

b)      A finding of willful infringement and the award of exemplary damages

pursuant to 17 U.S.C. § 504(c)(2);

c)      Injunctive relief pursuant to 18 U.S.C. § 1030 (g);

d)      Equitable relief including unjust enrichment, constructive trust, and

disgorgement of profits;

e)      A finding that Petrolink and Lee Geiser are jointly and severally liable for

the acts of copyright infringement and for damages incident thereto;

f)      Attorneys' fees according to 17 U.S.C. § 505 and 17 U.S.C. § 1203;

g)      Costs of court;

h)      Prejudgment and postjudgment interest; and

i)      All other relief the Court deems appropriate.

PREMISES CONSIDERED, Digidrill prays that upon final trial hereon, it have and recover judgment for the sought after relief, injunctive relief, damages, punitive damages, equitable relief, attorneys' fees, costs of court, prejudgment and post-judgment interest at the maximum lawful rates as requested above, together with such other and further relief to which it may be justly entitled.

Respectfully submitted,

*/s/ J. David Cabello*
J. David Cabello
*Attorney-in-charge*
State Bar No. 03574500
S.D. Tx Federal I.D. No. 3514
Lou Brucculeri
State Bar No. 00783737
S.D. Tx Federal I.D. No. 15510
**Blank Rome LLP**
717 Texas Avenue, Suite
Houston, Texas 77002
Tel.:    (713) 228-6601
Fax:    (713) 228-6605
dcabello@blankrome.com
lbrucculeri@blankrome.com

P. KEVIN LEYENDECKER
State Bar No. 00784472
S.D. Tx Federal I.D. No. 28415
**Ahmad, Zavitsanos, Anaipakos, Alavi & Mensing PC**

1221 McKinney Street, Suite 3460
Houston, Texas 77010
Tel.:    (713) 655-1101
Fax:    (713) 655-0062
kleyendecker@azalaw.com

**Attorneys for Plaintiff Digital Drilling
Data Systems LLC**

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that a true and correct copy of the foregoing was served on all counsel of record in compliance with the Federal Rules of Civil Procedure through the Court's CM/ECF system on this 16th day of September, 2015.

*/s/ Lynn Marlin*

First Amended Complaint: Digital Drilling v. Petrolink                    Page 25