United States District Court
Southern District of Texas
**ENTERED**
January 22, 2019
David J. Bradley, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| DIGITAL DRILLING DATA SYSTEMS LLC, § § Plaintiff, § VS. § PETROLINK SERVICES INC., § § Defendant. § | CIVIL ACTION NO. 4:15-CV-2172 |

## MEMORANDUM & ORDER

Before the Court is Plaintiff's Motion for Entry of Final Judgment on the Verdict and Award of Damages [Doc. No. 256]. Defendant has filed its Response in opposition [Doc. No. 257], and Plaintiff has filed a Reply in Support [Doc. No. 260]. Having considered the jury's findings and the parties' various motions, responses, and replies, the Court hereby GRANTS in part and DENIES in part Plaintiff's Motion for Entry of Final Judgment on the Verdict and Award of Damages [Doc. No. 256].

### I.

On July 29, 2015, Plaintiff Digital Drilling Data Systems LLC (hereinafter "Digidrill") filed its complaint against Defendant Petrolink Service Inc. (hereinafter "Petrolink")[1] alleging that Defendant had infringed Plaintiff's copyright, violated the Digital Millennium Copyright Act ("DMCA") (17 U.S.C. § 1201(a)(1)), violated various provisions of the Computer Fraud and Abuse Act ("CFAA") (18 U.S.C. §1030), and was unjustly enriched. [Doc. Nos. 1 (original complaint) & 21 (first amended complaint)].

---

[1] Mr. Lee Geiser was a co-defendant in this case, as initially filed, but was dismissed by joint stipulation [Doc. No. 209] and, as such, was no longer a party at the time of trial.

Both Petrolink and DigiDrill are in the business of oil field visualization services related to drilling for oil and gas by companies holding mineral rights ("operators"). Visualization services help operators "geo-steer" their drill bits by displaying real-time drilling data to the operator during drilling.

Plaintiff DigiDrill licenses software and hardware called the "DataLogger program" to operators and "measurement-while-drilling" ("MWD") service companies. DataLogger takes raw drilling data, corrects it, and keeps track of both the raw and the corrected data on a real-time basis. Uncorrected drilling data is not as useful because it does not accurately represent the position and depth of the drill bit. Consequently, many MWD companies and operators prefer to use the corrected data generated by DataLogger to steer drill bits into the below-ground formations that contain the oil and gas sought by the operators.

Defendant Petrolink also provides visualization services to operators. Operators provide Petrolink with access to drilling data from a drilling rig and Petrolink provides visualization or display of the drilling data to the operator during drilling.

This dispute arose after one of Petrolink's customers, EOG Resources ("EOG"), complained that visualization data being provided by certain MWD companies was inaccurate. Petrolink developed a computer program called Rig WITSML—referred to internally as the "Scraper." Petrolink used this program to access the drilling data stored in the DataLogger database and transfer it to Petrolink's computer for use in providing visualization services for EOG and other operators. Plaintiffs alleged that the Scraper violated United States Copyright laws, and that Petrolink was unjustly enriched through its use of the data the Scraper obtained.

On May 16, 2018, Judge Harmon issued an Opinion and Order granting in part and denying in part Petrolink's Motion for Summary Judgment. [Doc. No. 157]. Judge Harmon granted

Both Petrolink and DigiDrill are in the business of oil field visualization services related to drilling for oil and gas by companies holding mineral rights ("operators"). Visualization services help operators "geo-steer" their drill bits by displaying real-time drilling data to the operator during drilling.

Plaintiff DigiDrill licenses software and hardware called the "DataLogger program" to operators and "measurement-while-drilling" ("MWD") service companies. DataLogger takes raw drilling data, corrects it, and keeps track of both the raw and the corrected data on a real-time basis. Uncorrected drilling data is not as useful because it does not accurately represent the position and depth of the drill bit. Consequently, many MWD companies and operators prefer to use the corrected data generated by DataLogger to steer drill bits into the below-ground formations that contain the oil and gas sought by the operators.

Defendant Petrolink also provides visualization services to operators. Operators provide Petrolink with access to drilling data from a drilling rig and Petrolink provides visualization or display of the drilling data to the operator during drilling.

This dispute arose after one of Petrolink's customers, EOG Resources ("EOG"), complained that visualization data being provided by certain MWD companies was inaccurate. Petrolink developed a computer program called Rig WITSML—referred to internally as the "Scraper." Petrolink used this program to access the drilling data stored in the DataLogger database and transfer it to Petrolink's computer for use in providing visualization services for EOG and other operators. Plaintiffs alleged that the Scraper violated United States Copyright laws, and that Petrolink was unjustly enriched through its use of the data the Scraper obtained.

On May 16, 2018, Judge Harmon issued an Opinion and Order granting in part and denying in part Petrolink's Motion for Summary Judgment. [Doc. No. 157]. Judge Harmon granted

summary judgment in favor of Defendants with regard to Plaintiff's copyright and DMCA claims, and the parties submitted a joint dismissal of Plaintiff's CFAA claims. [Doc. Nos. 157 & 127]. Thus, the remaining issue at trial was whether Petrolink obtained a benefit from Digidrill by the taking of an undue advantage. Prior to trial, the case was transferred from Judge Harmon to this Court.

Trial began on November 6, 2018 before this Court. On November 9, 2018, the jury returned a verdict in favor of Digidrill, answering "yes" to the question: Did Defendant Petrolink obtain a benefit from Plaintiff Digital Drilling by the taking of an undue advantage? [Doc. No. 253 at 4:5-7]. The jury also found that Defendant's conduct was not consented to, and that the value of the benefit obtained was $414, 940.00. [*Id.* at 4:8-9].

## II.

In its pending motion, Plaintiff requests the Court award it $414,940.00 in damages, consistent with the jury's finding. [Doc. No. 256 at 2]. Plaintiff additionally requests (1) prejudgment interest at a rate of 5.25% per annum on the $414,940.00, calculated from the date the lawsuit was filed, July 29, 2015 and (2) post judgment interest calculated in accordance with 28 U.S.C § 1961. Plaintiff also provides that it will request costs be awarded pursuant to FED. R. CIV. P. 54(d)(1) within 14 days of entry of final judgment.

Defendant argues that the Court should not enter judgment in favor of Digidrill for the reasons stated in Petrolink's motions for Judgment as a Matter of Law filed at the close of Digidrill's case and at the close of evidence, and "all other errors that Petrolink preserved on the record." [Doc. No. 257 at 1]. Additionally, Defendant contends that the Court should exercise its discretion and reduce Plaintiff's request for prejudgment interest. Last, Defendant argues that it—

rather than Plaintiff—should be awarded costs because it was granted summary judgment on all copyright and Digital Millennium Copyright Act ("DMCA") claims. [*See* Doc. No. 157].

### III.

First, the Court grants Plaintiff's request for a judgment in the amount of $414, 940.00. This amount is supported by evidence and is consistent with the jury's findings on the value of the benefit obtained by Petrolink under Plaintiff's unjust enrichment theory of recovery.

### IV.

The Court now turns to the issues of prejudgment and post judgment interest. The principles of *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938) apply where a federal court is exercising pendant jurisdiction over a state law claim. *See Webco Indus., Inc. v. Thermatool Corp.*, 278 F.3d 1120, 1134 (10th Cir. 2002); *see also Mangold v. California Pub. Utilities Comm'n*, 67 F.3d 1470, 1478 (9th Cir. 1995). Prejudgment interest is "a substantive aspect of a plaintiff's claim;" thus, "federal courts apply state law to a plaintiff's claim for prejudgment interest unless a federal law preempts it." *In re Wage*, No. 1:07-CV-01314-SAB, 2016 WL 4087468, at *1 (E.D. Cal. Apr. 8, 2016) (quoting *In re Exxon Valdez*, 484 F.3d 1098, 1101 (9th Cir. 2007)).

"Prejudgment interest is compensation allowed by law as additional damages for lost use of the money due as damages during the lapse of time between the accrual of the claim and the date of judgment." *Johnson & Higgins v. Kenneco*, 962 S.W.2d 507, 528 (Tex. 1998) (internal quotation marks omitted). Section 304.102 of the Texas Finance Code lists 3 types of cases in which prejudgment interest shall be awarded: a judgment in a wrongful death, personal injury, or property damage case. The Supreme Court of Texas has extended this list to include other claims not explicitly stated in TEX. FIN. CODE § 304.102. *Johnson & Higgins*, 962 S.W.2d at 533 ("Our common law prejudgment interest holding applies to all cases in which judgment is rendered on

or after December 11, 1997, and to all other cases currently in the judicial process in which the issue has been preserved.").

Texas courts have held that "the decision to award prejudgment interest is left to the sound discretion of the trial court, which should rely upon equitable principles and public policy in making this decision." *Citizens Nat. Bank v. Allen Rae Invs., Inc.*, 142 S.W.3d 459, 487 (Tex.App.—Fort Worth 2004, no pet.). Nevertheless, Texas courts also recognize that "an equitable award of prejudgment interest should be granted to a prevailing plaintiff in all but exceptional circumstances." *Bituminous Cas. Corp. v. Vacuum Tanks, Inc.*, 75 F.3d 1048, 1057 (5th Cir. 1996) (internal citations omitted). "Prejudgment interest accrues on the amount of a judgment beginning on the earlier of the 180th day after the date the defendant receives written notice of a claim or the date the suit is filed and ending on the day preceding the date judgment is rendered." TEX. FIN. CODE § 304.104. Prejudgment interest is computed as simple interest. *Id.*

Plaintiff has asked that the prejudgment interest rate be calculated at 5.25%, the interest rate set by the Texas Office of Consumer Credit Commissioner. [Doc. No. 256 at 3]. Defendant does not provide an alternative interest rate. [Doc. No. 257 at 5]. Finding that prejudgment interest is appropriate in this case, the Court awards Plaintiff prejudgment interest at a rate of 5.25%.[2] Prejudgment interest shall be computed as simple interest, and the accrual period shall begin July 29, 2015 and end "on the day preceding the date [this] judgment is rendered." TEX. FIN. CODE § 304.104.

Plaintiff asks the Court to use 28 U.S.C § 1961 to determine the post judgment interest standard. [Doc. No. 256 at 3]. Section 1961(a)-(b) states that "[i]nterest shall be allowed on any money judgment in a civil case recovered in a district court [and] shall be computed daily to the

---

[2] https://occc.texas.gov/publications/interest-rates

date of payment . . . and shall be compounded annually." The Court hereby awards Plaintiff post judgment interest pursuant to 28 U.S.C. § 1961 and finds that post judgment interest shall be calculated at a rate of 2.40%.[3]

## V.

The Court finds merit to Defendant's argument that it was the prevailing party on many issues in this case. As such, costs and fees will not be assessed against either party as both prevailed on different issues. Each side shall bear its own costs and fees.

## VI.

In summary, the Court GRANTS in part and DENIES in part Plaintiff's Motion for Entry of Final Judgment on the Verdict and Award of Damages [Doc. No. 256] and awards Plaintiff damages in the amount of $414, 940.00. The Court also awards prejudgment interest at a rate of 5.25%, in accordance with the rate set by the Texas Office of Consumer Credit Commissioner. Finally, the Court awards post judgment interest in the amount of 2.40%. Each party shall bear its own costs and attorneys' fees.

Entry of this Order shall constitute entry of final judgment. IT IS SO ORDERED.

Signed this 22nd day of January, 2019.

                                              Andrew S. Hanen
                                              United States District Judge

---

[3] https://www.federalreserve.gov/releases/H15/default.htm